**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| ABE IGHALO, | ) |
|                      **Plaintiff,** | ) |
| vs. | ) Case No. 09-00032-CV-W-GAF |
| MICHAEL J. ASTRUE,<br>**Commissioner of Social Security,** | ) |
|                      **Defendant.** | ) |

**ORDER**

Presently before the Court is Defendant Michael J. Astrue, Commissioner of Social Security's ("Defendant"), Motion for Summary Judgment, filed pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1. (Doc. #25). Plaintiff Abe Ighalo ("Mr. Ighalo") opposes. (Doc. #27). For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

**DISCUSSION**

**I.    FACTS**

Mr. Ighalo is a naturalized citizen of the United States and is originally from Nigeria. (Complaint for Damages and Equitable Relief ("Complaint"), ¶ 1). Mr. Ighalo filed this action against Defendant, who is the head of his employer, the United States Social Security Administration ("SSA" or the "Agency"), alleging claims of discrimination based on national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). *Id.*

Mr. Ighalo began working for the Agency as a GS-12 Management and Program Analyst within the Office of Disability Adjudication and Review ("ODAR") at 11 Main Street, Suite 1700,

Kansas City, Missouri.¹ *Id.* at ¶ 2. During most times relevant to Mr. Ighalo's claims, Patricia Billinger ("Ms. Billinger") was the Kansas City Regional Director of Operations and Administration in ODAR, and Mr. Ighalo's immediate supervisor. (Affidavit of Patricia Billinger ("Aff't of Billinger"), ¶ 3). She became his immediate supervisor in September of 2005. *Id.* However, from January 25, 2007, through April 1, 2007, Ms. Billinger served a detail outside of the Kansas City Regional ODAR office. (Billinger Depo., 39:19-24; Affidavit of Debra Bice ("Aff't of Bice"), ¶ 4). During this period, Debra Bice, ("Judge Bice")² who, at that time, was the Regional Management Officer and normally Mr. Ighalo's second-line supervisor, became Mr. Ighalo's first-line supervisor. (Aff't of Bice, ¶¶ 1-4).

On November 5, 2007, Mr. Ighalo contacted the Agency's Office of Civil Rights and Equal Opportunity ("OCREO") to informally complain about alleged discrimination; as a result, he received formal counseling from OCREO. (Individual EEO Discrimination Complaint Form ("Discrimination Complaint Form"), p. 1). In his Discrimination Complaint Form, Mr. Ighalo contended the Agency had discriminated against him on the basis of his national origin in the following respects:

1) on October 31, 2007, he received a rating of three in the element of interpersonal skills for the 2007 performance period;

2) he was not selected for the Supervisory Paralegal Specialist position, which was posted under Vacancy Announcement No. 83-07; and

---

¹Mr. Ighalo was promoted to a GS-13 position as a Supervisory Paralegal Analyst (Group Supervisor) in August of 2009. (Ighalo Depo., 17:11-18:14;39:13-17).

²Judge Bice was appointed as the Hearing Office Chief Administrative Law Judge in Kansas City, Missouri, in January of 2009.

(3) he was not compensated for allegedly performing higher graded GS-13 duties from January 2006 to August 2009.

(Affidavit of Abe Ighalo ("Aff't of Ighalo"), pg. 1-6; Doc. #25, p. 9).

Mr. Ighalo's complaints were not resolved through the OCREO counseling process, and on November 21, 2007, he filed a formal complaint of discrimination, which was accepted by the Agency on February 4, 2008. (Doc. #25-5). Following this, Mr. Ighalo did not file a request for an administrative hearing before the Equal Opportunity Commission, but instead filed a complaint with this Court dated January 21, 2009. (Complaint).

**A. 2007 PERFORMANCE APPRAISAL RATING**

Prior to fiscal year 2007, performance of Agency employees was evaluated on a "pass-fail" system, and an employee's performance was either deemed "successful" or "unacceptable." (Mr. Ighalo's 2006 Performance Assessment). Since fiscal year 2007, the Agency's evaluation methods have changed to a Performance Assessment and Communication System ("PACS"). (Mr. Ighalo's 2007 PACS Performance Plan, pg. 1-2). Rather than a "pass-fail" system, under PACS, employees are evaluated on four elements: (1) achieves business results; (2) demonstrates job knowledge: (3) interpersonal skills; (4) and participation. *Id.* Expectations for each element are specific to an employee's position. *Id.* Additionally, Agency supervisors are required to specifically evaluate an employee's oral and written communication skills. (Aff't of Bice, ¶ 4).

In 2007, as a Management and Program Analyst employee, the expectations for Mr. Ighalo's performance under the element of interpersonal skills were:

1) maintains cooperative and productive working relationships;

2) listens and responds appropriately to all methods of communication . . . from all employees, managers, and the general public;

3) maintains professionalism in all interactions;

4) communicates accurate information in a courteous, concise, and understandable manner; and

5) provides constructive feedback to managers and employees seeking assistance.

(Mr. Ighalo's 2007 PACS Performance Plan, p. 2). Employees are given a rating of one (1), three (3), or five (5) in each of the individual elements at the end of each fiscal year. *Id.* at pg. 2-3. There is also a mid-year performance discussion between supervisors and employees. *Id.* A rating of one (1) is considered not successful, a rating of three (3) is considered successful, and a rating of five (5) is considered outstanding. *Id.* The ratings are averaged to determine an employee's element average, and, based on the element average, an employee's contribution is rated as outstanding, successful, or not successful. *Id.* An employee must receive a rating of five in all four elements to receive an overall rating of outstanding. (Doc. #25, p. 11; Doc. #28, p. 1).

During his February 5, 2007, mid-year Performance Discussion, Judge Bice noted, "Your oral communication is better at a slower speed." (Mr. Ighalo's 2007 PACS Performance Plan, pg. 2, 4; Aff't of Bice, ¶ 4). During her deposition, Judge Bice recalled that she had told Mr. Ighalo at his mid-year Performance Discussion meeting that he was "difficult to understand when he talked fast, but that he was easy to understand when he slowed down," and that during the meeting, she had to ask him to slow down his speech. (Bice Depo., 46:18-47:21).

On October 31, 2007, after her return, Ms. Billinger met with Mr. Ighalo to complete his final Performance Discussion for fiscal year 2007. (Mr. Ighalo's 2007 PACS Performance Plan, pg.

2-3). In that evaluation, Mr. Ighalo received a rating of five (5), indicating outstanding performance, in the area of "participation." *Id.* p. 2. Mr. Ighalo received a three (3), indicating successful performance, in the areas of "achieves business results," "demonstrates job knowledge," and "interpersonal skills." *Id.* at 2-3. Under "interpersonal skills," Ms. Billinger commented:

> You are respectful to your peers and members of management. You're [sic] communication has improved and the listener can understand you better when you speak at a slower speed. You need [to] continue to focus on communicating clearly when you speak to others.

*Id.* at p. 4. Overall, Mr. Ighalo received an element average of 3.5, which was considered a successful performance rating. *Id.* at p. 3. Mr. Ighalo stated during his deposition that he would have no problem with his score of three (3) for his "interpersonal skills" assessment if made regardless of his national origin because he knew that he could improve upon that rating in the future. (Ighalo Depo., 50:4-11).

**B.     NON-SELECTION FOR SUPERVISORY PARALEGAL SPECIALIST POSITION**

Vacancy Announcement Number 83-07 for a Supervisory Paralegal Specialist position opened on May 11, 2007.[3] (Doc. #25, p. 13; Doc. #28, p. 1). The Supervisory Paralegal Specialist position was with the ODAR Hearing Office in Dallas, Texas. (Doc. #25, p. 13; Doc. #28, p. 1). The vacancy announcement closed on May 25, 2007. *Id.*

The position was a temporary appointment, not to exceed one year, although it could be extended or made permanent without further competition. *Id.* According to the vacancy announcement, the job involved serving as the first-line supervisor of a group of attorney-advisers,

---

[3]In his affidavit, Mr. Ighalo alleges he was also denied selection for group supervisor positions in Kansas City and St. Louis, Missouri. (Affidavit of Ighalo ("Aff't of Ighalo"), ¶ 7). Additionally, Mr. Ighalo alleges he was not selected for other Agency positions throughout the Country. *Id.* at ¶ 11. No evidence is presented demonstrating Mr. Ighalo filed EEO discrimination complaints when he was not selected for any of those positions.

5

paralegal analysts, and technicians who worked with Administrative Law Judges ("ALJs") processing claims at the hearing level. *Id.* The position required the selectee to provide professional and technical support to ALJs and to perform any and all duties of the paralegal specialists they supervised. (Doc. #25, p. 13; Doc. #28, p. 1). The vacancy announcement stated that a candidate should have experience in legal, quasi-legal, paralegal, legal technician, or related work that demonstrated skill and judgment in the analysis of cases; knowledge of pertinent subject areas; the ability to evaluate pertinent facts and evidence; the ability to interpret and apply laws, rules, regulations, and precedents; the ability to communicate effectively orally and in writing; and the ability to effectively deal with individuals and groups. (Doc. #25, pg. 13-14; Doc. #28, p. 1).

When evaluating eligible candidates, the promotion committee considered a candidate's experience, training, and self-development. (Doc. #25, p. 14; Doc. #28, p. 1). Applicants were required to be in good standing, meaning they had a successful performance appraisal and were not serving under a formal performance improvement plan. *Id.* Eleven individuals, including Mr. Ighalo, made the best qualified list. *Id.*; *see also* Doc. #25-16.

Judge Joan Parks Saunders ("Judge Parks Saunders"), the Regional Chief Administrative Law Judge, was the selecting official for the Supervisory Paralegal Specialist position advertised under Vacancy Announcement Number 83-07.[4] *Id.* To make the selection, Judge Parks Saunders asked the hearing office management to interview the candidates and provide recommendations. *Id.* Bunnie Bessel ("Ms. Bessel"), ODAR Hearing Office Director in Dallas, Texas, conducted

---

[4]Between 2005 and 2007, Judge Parks Saunders was the selecting official for 50 selections. Thirty-one (31) selectees were Caucasian, eleven (11) were African-American, six (6) were Hispanic, and two (2) were American Indian or Alaskan. (Doc. #25, p. 14; Doc. #25-17; Doc. #28, p. 1). In her affidavit, Judge Parks Saunders states she is "primarily of African ancestry." (Affidavit of Judge Park Saunders ("Aff't of Judge Park Saunders"), ¶ 3).

6

interviews and made the selection recommendations for the Supervisory Paralegal Specialist position to Judge Parks Saunders. *Id.* Ms. Bessel made a phone call to Judge Bice to discuss Mr. Ighalo's application. (Affidavit of Bunnie Bessel ("Aff't of Bessel"), ¶ 6; Bice Depo., 43:24-44:9). In her affidavit, Ms. Bessel stated Judge Bice mentioned that Mr. Ighalo spoke "really fast" when nervous, and she had, on occasion, asked him to slow down, which he would do without problem.[5] (Aff't of Bessel, ¶ 6). Ms. Bessel also found Judge Bice's overall comments about Mr. Ighalo to be very positive. (Doc. #25, p. 15; Doc. #28, p. 1). Ms. Bessel said Judge Bice's comments about Mr. Ighalo's communication skills did not negatively influence her recommendation. *Id.* In fact, she rated Mr. Ighalo as her third top candidate for the position. *Id.*

Ms. Bessel recommended Jonathan Sutter ("Mr. Sutter") as her top candidate for the Supervisory Paralegal Specialist position. (Aff't of Bessel, ¶ 3). In her affidavit, Ms. Bessel stated she recommended Mr. Sutter because "he had an extensive experience with [the Agency] and ODAR[,] . . . a background in basic claims processing[,] . . . experience at the ODAR hearing office and Regional office level[, and] . . . had also been in a leadership training program." *Id*. at ¶ 4. She further stated that while she was aware Mr. Ighalo "had experience in the ODAR hearing office," he had less overall Agency experience than Mr. Sutter. *Id.* at ¶ 5. She also noted Mr. Sutter possessed "a lot of knowledge of running reports and systems, and Mr. Ighalo did not quite have that depth of knowledge." *Id.* Lastly, Ms. Bessel stated that Mr. Sutter had received "several suggestion awards for coming up with new and better ways to do things," and she believed such "talent could

---

[5]Judge Bice did not recall using the word "nervous" when referring to Mr. Ighalo, but she did remember telling Ms. Bessel that Mr. Ighalo's biggest weakness was that it was sometimes difficult to understand him when he spoke quickly. (Doc. #25, p. 15; Doc. #28, p.1; Bice Depo., 46:18-25).

be put to good use in [her] office." *Id.* Ms. Bessel denied knowing Mr. Ighalo's national origin at the time of his interview and at the time she made the selection recommendations. (Doc. #25, p. 16; Doc. #28, p. 1; Aff't of Bessel, ¶ 8).

Judge Parks Saunders, in her affidavit, stated she reviewed all applications for the position and Ms. Bessel's recommendations before she made her hiring decision. (Aff't of Judge Parks Saunders, ¶ 6). Further, she revealed she was interested in selecting a candidate with program knowledge and management experience. *Id.* at ¶ 7. Judge Parks Saunders stated that Mr. Sutter had "the experience and knowledge we were very interested in obtaining," because he began his experience with the Agency "as a Title XVI claims representative and continued in this capacity for three and a half years." *Id.* Mr. Ighalo was not selected for the job, she said, because he "had less program and management experience than [Mr. Sutter]" and "was not the best candidate for the job." *Id.* at ¶¶ 8-9. Lastly, Judge Parks Saunders stated that she did not receive any information concerning Mr. Ighalo's accent or his national origin and did not, in fact, know his national origin. *Id.* at ¶¶ 12-14. Mr. Ighalo never spoke to Judge Parks Saunders prior to her selection decision. (Doc. #25, p. 17; Doc. #28, p. 1; Ighalo Depo., 61:21-62:10).

In his Complaint, Mr. Ighalo acknowledged that Ms. Billinger had "nominated him for the 2006 Commissioner Citation," which "is deemed to be a high honor in the Social Security Administration." (Complaint, ¶¶ 6-7). He also detailed Ms. Billinger's "glowing" reviews of his performance. *Id.* at ¶¶ 8-9. However, he then alleges that he was denied promotion to GS-13 positions due to "comments and conduct of his supervisors: [Judge] Bice and [Ms.] Billinger, during the period 2006 through 2008." *Id.* at ¶ 11.

8

In support of the above allegation, Mr. Ighalo states, "[Judge] Bice came to [his] office and told him that [she] had received a telephone call from Ms. Bessel, and that [she] concurred with [Mr. Ighalo's positive] characterization of his work, 'but I told Ms. Bessel that you have an accent.'" *Id.* at ¶ 18. Mr. Ighalo is of the opinion that "[Judge] Bice's statement to Ms. Bessel was a coded message suggesting 'otherness' or undesirability" that "stigmatized [Mr. Ighalo]." *Id.* at ¶ 22.

C.     **ALLEGED NON-PAYMENT FOR HIGHER GRADED JOB DUTIES**

Mr. Ighalo first raised concerns about allegedly performing GS-13 job duties while being paid a GS-12 salary in his formal complaint of discrimination filed November 21, 2007. (Doc. #25, p. 17; Doc. #28, p. 1). Prior to retiring in January of 2006, John Martin was the Program Operations Officer in the Kansas City Regional ODAR office, a GS-13 classified position. (Aff't of Ighalo, ¶ 14). The Program Operations Officer serves as the senior level expert for the Program Operations Branch within the ODAR Regional Office and is responsible for planning, directing, and coordinating the activities of the branch. (Doc. #25, p. 18; Doc. #28, p.1). The individual serves as the principal technical advisor to the Regional Management Officer ("RMO") in directing and coordinating field hearings and appeal recommendations, and independently acting upon substantive programmatic matters regarding effective hearings and the issuance of decisions. *Id.*

During a majority of the time of the alleged incidents in this lawsuit, Mr. Ighalo was a GS-12 Management and Program Management Analyst. (Doc. #25, p. 20; Doc. #28, p. 1). In May 2006, he was temporarily promoted on a one-hundred-twenty-day (120-day) detail to the Program Operations Officer position previously held by Mr. Martin. *Id.* This detail terminated on September 23, 2006. *Id.*

If an employee believes his position is not properly classified, the employee may request an audit of his or her position to determine whether it is properly classified. (Doc. #25, p. 23; Doc. #28, p. 1). If the first-line supervisor does not resolve the employee's concerns to the employee's satisfaction, the employee may request that the supervisor arrange for a Classification Specialist to provide further information to the employee. *Id.* The employee may appeal the official classification to the Agency or Office of Personnel Management ("OPM"). (Doc. #25, p. 24; Doc. #28, p. 1). Judge Bice and Ms. Billinger did not recall Mr. Ighalo ever requesting a reclassification of his position. *Id.* Mr. Ighalo has admitted that he did not request a reclassification of his position. *Id.*

## II.    LEGAL STANDARDS

### A.    STANDARD FOR SUMMARY JUDGMENT

Fed. R. Civ. P. 56 addresses motions for summary judgment. Summary judgment should be granted if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On summary judgment, a district court must view the facts "in the light most favorable to the nonmovant, giving it the benefit of all reasonable inferences to be draw from the facts." *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990). A court does not weigh the evidence to resolve disputed facts, but instead determines whether there are genuine issues of fact that must be resolved at trial. *See Heritage Constructors, Inc. v. City of Greenwood, Ark.*, 545 F.3d 599, 601 (8th Cir. 2008).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Mo., ex rel. Garstang v. U.S. Dep't of Interior*, 297 F.3d 745 (8th Cir. 2002) (citations omitted). If a moving party carries its initial burden, the party opposing summary judgment must go

beyond the pleadings, and by affidavits or by the "depositions, answers to interrogatories, and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a party bearing the burden of proof on an essential element of a claim does not make a sufficient showing on the element, the opposing party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

### B. BURDEN OF PROOF FRAMEWORK UNDER TITLE VII

Title VII prohibits employers from discriminating against employees based on race, color, religion, sex, or national origin. Without a showing of direct evidence of discrimination, the *McDonnell Douglas* shifting-burden standard will apply. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973). There are three steps to this shifting-burden standard. *Id.* First, the plaintiff bears the burden of establishing a *prima facie* case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. Second, if the plaintiff successfully makes a *prima facie* case, the burden shifts to the defendant/employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* "The burden that shifts to [the defendant/employer], therefore, is to rebut the presumption of discrimination by producing evidence that [the plaintiff] was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Third, if the defendant/employer properly carries this burden, the plaintiff then must prove, by a preponderance of the evidence, that the legitimate, non-discriminatory reasons offered by the defendant/employer are mere pretext to disguise discrimination. *See McDonnell Douglas*, 411 U.S. at 804. Despite the shift in the burden of production described above, the burden of persuasion always remains on the plaintiff to prove his case by a preponderance of the evidence. *Burdine*, 450 U.S. at 256.

### III. ANALYSIS

A.   **PERFORMANCE APPRAISAL RATING**

Mr. Ighalo has alleged he was discriminated against on the basis of his national origin when, on October 31, 2007, he was given a performance rating of three (3), indicating successful performance, in the element of "interpersonal skills" for the 2007 performance appraisal period. Accordingly, Mr. Ighalo must establish a *prima facie* case of such discrimination by demonstrating the following: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *See Thomas v. Corwin*, 483 F.3d 516, 529 (8th Cir. 2007) (citing *Burchett v. Target Corp.*, 340 F.3d 510, 518 (8th Cir. 2003)); *see also* Brown *v. Paulson*, 597 F. Supp. 2d 67, 72 (D.D.C. 2009).

It is undisputed that Mr. Ighalo, as a Nigerian-born, naturalized United States citizen, is a member of protected class. Thus, the first prong of Mr. Ighalo's *prima facie* case is met.

Mr. Ighalo cannot, however, meet the second prong of his *prima facie* case because no evidence presented demonstrates that his receiving a performance rating of three (3), which is classified as a successful performance rating, in the element of "interpersonal skills" represents an "adverse employment action." *See Brown*, 597 F. Supp. 2d at 72. While "actions short of termination may constitute adverse actions within the meaning of [Title VII] . . . not everything that makes an employee unhappy is an actionable adverse action." *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 359 (8th Cir. 1997) (quotations and citations omitted). Instead, the action "must have had some adverse impact on [the plaintiff] to constitute an adverse employment action." *Id.* "[E]ven a poor or downgraded performance evaluation, which is not the case here, is not an actionable adverse action under Title VII unless it has affected the employee's grade or salary.*" Brown*, 597 F. Supp. 2d at 74 (citing *Na'im v. Rice*, 577 F. Supp. 2d 361, 275 (D.D.C. 2008)).

Here, the Agency considered Mr. Ighalo's performance rating in the element of "interpersonal skills" as successful, indicating that he possessed adequate interpersonal skills. As an initial matter, the act of giving Mr. Ighalo a successful rating, standing alone, does not constitute a negative or "adverse employment action." *See id.* While Mr. Ighalo may have wished to receive a higher score, he did state in his deposition that he was not particularly concerned with an "interpersonal skills" rating of three (3) because he knew that, over time, he could improve upon that score. Regardless, there is no evidence demonstrating that Mr. Ighalo was subjected to any adverse employment action as a result of this rating.[6] Mr. Ighalo's status as an Agency employee remained unchanged after he received his performance evaluation. Drawing all inferences from the evidence before the Court in his favor, Mr. Ighalo has not and cannot demonstrate that the second prong of his *prima facie* case has been met. Therefore, Defendant's Motion for Summary Judgment regarding Mr. Ighalo's claims of national origin discrimination when he received a performance rating of three (3) in "interpersonal skills" is **GRANTED**.

**B.     NON-SELECTION FOR SUPERVISORY PARALEGAL SPECIALIST POSITION**

Mr. Ighalo has alleged he was discriminated against due to his national origin when he was not selected for the Supervisory Paralegal Specialist position, posted under Vacancy Announcement No. 83-07. To assert a *prima facie* case of national origin discrimination based on non-selection, Mr. Ighalo must demonstrate: (1) he is a member of a protected class; (2) he applied and was

---

[6]Any attempt by Mr. Ighalo to allege this performance rating might somehow hinder his ability to be promoted in the future would be unsupported and purely speculative. In fact, considering Mr. Ighalo has been promoted to a GS-13 position during the pendency of this action, such an argument would appear to be against the clear weight of the evidence. Additionally, Mr. Ighalo cannot argue that this performance rating caused his non-selection for the Dallas, Texas, position because the vacancy announcement for that position opened and closed in May of 2007, while his rating was not issued until October of 2007.

qualified for a promotion to an available position; (3) he was not selected; and (4) a similarly situated candidate, outside Mr. Ighalo's protected class, was selected instead. *See Young v. Time Warner Cable Capital, L.P.*, 443 F. Supp. 2d 1109, 1125 (W.D. Mo. 2006) (citing *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005)). There is no direct evidence of national origin discrimination under this claim. Therefore, the *McDonnell Douglas* three-part burden-shifting analysis applies. *See id.*

Defendant admits that Mr. Ighalo has established a *prima facie* case of discrimination, stating Mr. Ighalo "is a member of a protected class; he applied and was qualified for the Supervisory Paralegal Specialist position; he was not selected for the position; and Mr. Sutter, an individual allegedly outside Mr. Ighalo's protected class was selected." (Doc. #25, p. 30). The *prima facie* case having been met, the burden of production shifts to the Agency to demonstrate it had a legitimate, nondiscriminatory reason for its action. *See Montes v. Greater Twin Cities Youth Symphonies*, 540 F.3d 852, 857-58 (8th Cir. 2008). This burden "is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 705 (8th Cir. 2005).

Viewing the evidence presented, the Agency has met it burden to demonstrate it had a legitimate nondiscriminatory reason for its non-selection of Mr. Ighalo for the Supervisory Paralegal Specialist Position in Dallas, Texas. In fact, the Agency has offered numerous nondiscriminatory reasons. As an initial matter, it is of note that Mr. Ighalo was selected by Ms. Bessel as a top three candidate for the position. The Agency does not dispute that Mr. Ighalo was qualified for the position. It has, however, clearly articulated a number of legitimate, nondiscriminatory reasons why Mr. Ighalo was not considered the "best" candidate for this particular position.

First, Judge Parks Saunders stated that her office was interested in selecting a candidate with ample program and management experience. Mr. Ighalo had less program and management experience than Mr. Sutter. Second, Ms. Bessel recommended Mr. Sutter because he had, overall, more relevant Agency experience than Mr. Ighalo. She also highly valued the fact Mr. Sutter had received multiple suggestion awards for suggested improvements in the areas of running reports and running Agency systems. No evidence suggests Mr. Ighalo receive comparable awards, and Ms. Bessel explained that Mr. Ighalo's experience with running reports and systems was not as extensive as Mr. Sutter's. Overall, these factors led Judge Parks Saunders to determine that Mr. Ighalo "was not the best candidate for the job."

Because the Agency has met its burden to demonstrate a legitimate, non-discriminatory reason for its action, the burden shifts to Mr. Ighalo to demonstrate that the Agency's offered reasons were not the true reasons for its action, but rather are mere pretext to hide discrimination based on national origin. *See Riser v. Target Corp.*, 458 F.3d 817, 820 (8th Cir. 2006). Here, there is no evidence of pretext. Even in his Complaint, Mr. Ighalo's most damaging allegation was that the comment of Judge Bice to Ms. Bessel that Mr. Ighalo had "an accent" was "a coded message suggesting 'otherness' or undesirability'" that "stigmatized" him.

Comments regarding one's accent, in some situations, might raise an inference of national origin discrimination. *See Carino v. Univ. of Okla. Bd. of Regents*, 750 F.2d 815, 818-19 (10th Cir. 1984) (finding employment termination due to a foreign accent constituted national origin discrimination); *see also Cerge v. Chertoff*, Appeal No. 0120060363, 2007 WL 6051335 at *3 (EEOC Oct. 9, 2007). However, even the Equal Employment Opportunity Commission (the "EEOC") has stated that "merely expressing an inability to understand a person's 'manner of

15

speaking' does not necessarily reflect animus based upon national origin." *Cerge*, 2007 WL 6051335 at *3.

Here, Mr. Ighalo is unable to demonstrate that his supervisors informed potential future employers that Mr. Ighalo was difficult to understand because of his accent. There is evidence from Mr. Ighalo that Judge Bice stated she told Ms. Bessel he had an accent. Such a comment, standing alone, is not evidence of discrimination under Title VII. Mr. Ighalo does not deny that he has an accent, and Judge Bice's acknowledgment of this fact, without more, does not suggest that Judge Bice disfavored Mr. Ighalo's accent or discriminated against him based on it. There is also evidence from Judge Bice, Ms. Billinger, and Ms. Bessel that comments were made to the effect that Mr. Ighalo's speech was more easily understood when he spoke at slower speeds. Again, such comments do not suggest intent to discriminate based on national origin. A person who speaks perfect English, with no hint of an accent, if such a person exists, may be difficult to understand or comprehend when speaking too quickly.

The facts of the case, even when viewed in the light most favorable to Mr. Ighalo, fall short of demonstrating pretext. Instead, the record demonstrates that Mr. Ighalo was: (1) well qualified for the GS-13 position in Dallas, Texas; (2) selected as the number three (3) overall candidate for the position by Ms. Bessel; and (3) not selected by Judge Parks Saunders because she felt another candidate had more relevant experience and was a better fit for the position. Moreover, Judge Parks Saunders, who is of "primarily African ancestry," has a consistent history of hiring minority employees[7], and she stated that she was neither aware of Mr. Ighalo's national origin nor his accent

---

[7]Between 2005 and 2007, while Judge Parks Saunders was a selecting official, approximately 38 percent of all selectees were minorities.

when making her selection. Because Mr. Ighalo cannot demonstrate that the Agency's legitimate, non-discriminatory reasons for his non-selection are pretext to hide discrimination, Defendant's Motion for Summary Judgment on the claims for non-selection is **GRANTED**.[8]

C.   **ALLEGED PERFORMANCE OF HIGHER-GRADE JOB DUTIES**

Mr. Ighalo has alleged he was not compensated for his performance of higher-graded job duties he undertook after John Martin retired. He alleges the reason he did not receive such compensation was because the Agency discriminated against him due to his national origin. However, for the reasons set forth below, Mr. Ighalo's claim must fail.

Mr. Ighalo has stipulated the Agency had a process by which employees could request an audit of their position to determine whether it was properly classified. (Doc. #25, p. 23; Doc. #28, p. 1). If an employee believes he or she is not being paid an amount commensurate with his or her duties, the employee must make an audit request to the employee's first-line supervisor, and if the first-line supervisor does not resolve the concern, the employee may request a Classification Specialist be contacted to provide further information to the employee. *Id.* Any official classification decision thereafter may be appealed to the Agency or the OPM.

---

[8]Summary judgment is also **GRANTED** to Defendant on Mr. Ighalo's claims for non-selection to various other GS-13 positions from 2006 to 2008 due to Mr. Ighalo's failure to exhaust administrative remedies. Under the Code of Federal Regulations, Agency employees must initiate contact with an EEO Counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). The law is clear that a Federal employee must exhaust administrative remedies in a timely manner prior to bringing a discrimination claim under Title VII. *McAlister v. Sec. of Dep't of Health and Human Servs.*, 900 F.2d 157, 158 (8th Cir. 1990). Failure to do so is fatal to the claim. *Id.* Mr. Ighalo never initiated contact with an EEO Counselor to address these claims. Thus, Mr. Ighalo's failure to timely seek counseling is fatal to his Title VII claims for discrimination in his non-selection to various other GS-13 positions from 2006 to 2008. *See Hummel v. Postmaster Gen. of U.S.*, 21 F. Supp. 2d 758, 761 (W.D. Mich. 1998); *see also Roman-Martinez v. Runyon*, 100 F.3d 212, 217 (1st Cir. 1996).

Mr. Ighalo admits that he did not request an audit of his position to determine whether it was properly classified. (Doc. #25, p. 24; Doc. #28, p. 1). No evidence suggests Mr. Ighalo even broached the subject with his supervisors. By not giving the Agency notice of his grievance, Mr. Ighalo failed take "steps necessary to 'apply for' a grade increase." *See Marshall v. Shalala*, 16 F. Supp. 2d 16, 20 (D.D.C. 1998). "Because [Mr. Ighalo] failed to take even the most elementary step necessary by applying for a promotion to the GS-13 level," this Court finds Mr. Ighalo has "failed to establish a *prima facie* case of discriminatory non-promotion." *See id.* Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to Mr. Ighalo's allegations of non-payment for higher-grade duties.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED** in its entirety. Mr. Ighalo has failed to establish questions of fact in this case that would warrant trial before a finder of fact. Therefore, Defendant is entitled to judgment as a matter of law.

**IT IS SO ORDERED.**

                                                          s/ Gary A. Fenner
                                                          Gary A. Fenner, Judge
                                                          United States District Court

DATED: **March 2, 2010**